By the Court.—Ingraham, J.
—This is an action of ejectment for a lot of land on Tenth avenue, between Thirty-second and Thirty-third streets,, in the city of Yew York, known as Yo. 398 Tenth avenue.
It appears to have been conceded on the trial, as it was in the argument of the appeal, that plaintiff showed a valid title to the property in question, except for an adverse possession ; and the learned chief judge before whom the action was tried, substantially charged that the jury must find a verdict for the plaintiff, unless they should find that the defendant and her grantors had had adverse possession of the premises in question ; and the question on the appeal is, whether there was sufficient evidence from which the jury could find such possession.
It appeared that in the year 1853, the City Fire Insurance Company made a loan to one John B. Wright, and as security for such loan took a mortgage on the property in question from said John B. Wright, who claimed to be in possession of the property at that time. That mortgage was foreclosed, and the insurance company, on March 13, 1857, purchased the property at' that sale and received a deed therefore, dated on that day, and immediately went into possession under the deed ; for six years it rented the property and received the rents and profits, and during that time was in exclusive adverse possession ; in 1863 the building on the property became untenantable, and the *170 company was unable to rent it. It remained untenantable, except that it was at one time used for the storage of some' barrels, until 1874, when the company sent and had the building taken down, and had a fence put up in front; and it remained in that condition until 1877, when the company sold it, and shortly after that time a building was erected that still remains on the property. From the time that the insurance company purchased the property until they sold it, they paid the taxes, assessments and Croton water rents, and the president of the company swore that it never intended to abandon the possession of the premises, and had no knowledge that any one claimed the title to it or was ever in actual pessessien of it except the company.
It further appeared that during this period some one, under what purported to be a judgment of the supreme court in an action to which the company was not a party, put a gate in the fence and put up a sign ; but that immediately after' the gate was put in the company had the gate taken down and the fence rebarricaded ; that the president went to see the property very, often, but that sometimes four or five months might have elapsed between his visits. There was also evidence that the house on the property was built in the year 1844, and was occupied from that time until the year 1863 ; that no one lived in the house in the years 1864 to 1868 inclusive ; that occasionally it would - be occupied by squatters, and on the complaint of some one (it does not appear who), the police had turned the squatters out ; that after the roof fell in the outside door was left open, and one of the policemen had fastened it up.
This action was commenced in May, 1880. If there was sufficient evidence for the jury to find that the possession of the insurance company continued while the building was untenantable and unrented, from 1864 to 1874, when the insurance company had the fence put up, there then was an adverse possession of the premises. It was established that the insurance company entered into the possession of the premises under a claim of title exclusive of any other right, founding the claim upon another instrument, as being a *171 conveyance of the premises in question, so that the requirements of the adverse possession can be determined by section 370 of the Code of Civil Procedure (that section being substantially a re-enactment of section 83 of the Code of Procedure)—and that for a period of six years they were in exclusive adverse possession, renting the property and receiving the rents thereof and exercising all the acts of ownership over it.
It is undoubtedly true that the possession must be “actual, open, continuous, hostile and exclusive” for twenty years ; that if there is any breach in the possession the adverse possession is not established ; but the statute does not require an impossibility. The property is by the statute to be usually cultivated or improved, or “ protected by a substantial inclosure”; either of these is sufficient to constitute the “possession.” It is nowhere required that the inclosure should be such a one as would prevent persons from climbing over or breaking in, but it must be a substantial improvement or use of the property, or a substantial inclosure, one that would give notice to the world that the ownership of the property is claimed, and what is sufficient to constitute such a possession depends very much upon the character of the property.
Here as long as the property remained in a condition to be rented and tenants could be obtained, the company rented it and received the proceeds. It then became impossible to obtain tenants and the building was uninhabited ; but the building was still on the property, it was still inclosed by a fence on three sides and the building in front, and the fact that squatters and stragglers at times broke in, made no such entry or divested the insurance company of the possession of the premises.
The evidence is direct that there was no intention of abandoning the possession. The president of the com pan y paid frequent visits, the company paid the taxes and Croton rents, and when from the condition of the building it appeared as if it would fall down, so that it would be an inclosure the company took it down and replaced it by a fence, *172 and that fence was continued down to the time the building which is now on the property was erected ; during all the time the property in question was unrented, however, the company exercised all the acts of ownership over it that are usually exercised by the owners of a piece of property in the condition of the premises in question ; the officers of the company went frequently to see it, and there was no entry of the plaintiff or any one else adverse to the possession of the insurance company.
We have examined the authorities cited by appellant, and do not think that they apply to the questions in this case, from the facts, and are of opinion that there was sufficient for the jury to find that the possession had been continuous, and adverse and sufficient to support the verdict. There were no exceptions taken to the charge. And without an exception an objection to it cannot be considered on appeal. There was no error committed on the trial and the judgment should be affirmed.
O’Gorman, J., concurred.